OPINION
{¶ 1} Appellant, Carrolls Corporation, d.b.a. Burger King Restaurant, appeals the decision of the Lake County Court of Common Pleas affirming the grant of an area variance in favor of appellee, Steak `n Shake. For the following reasons, we affirm the decision of the court below.
 {¶ 2} The subject of the present appeal is a single parcel of land located at 5051 SOM Center Road, in Willoughby, Ohio. Steak `n Shake intends to purchase the property and build a restaurant upon it. The property sits within Willoughby's General Business zoning district, which allows for the property's use as a restaurant. Willoughby Codified Ordinances 1141.03. The lot has about 150 feet of frontage on SOM Center Road and is about 300 feet deep. The site is currently vacant but was previously occupied by BP ProCare auto service station. Immediately to the north of the property in question, at 5021 SOM Center Road, is a Burger King restaurant. To the south of the property is Kaiser Court and to the east and north-east are multi-story office buildings and their parking lots. Nearby, at 34600 Euclid Avenue, is a Dairy Queen restaurant.
 {¶ 3} Steak `n Shake submitted a site plan to the City of Willoughby describing a proposed 4,111 square foot restaurant with seating for about 99 persons and 61 parking spaces. Steak `n Shake also applied for a conditional use permit to construct a drive-through for the restaurant. In May 2004, the city informed Steak `n Shake that a restaurant having 4,111 square feet in area is required to provide 83 parking spaces.[1] The plan submitted by Steak `n Shake was deficient by 22 parking spaces.
 {¶ 4} In May 2004, Steak `n Shake filed an application for zoning appeal, seeking a variance to reduce the number of required parking spaces to 61. A hearing was held before appllee, Board of Zoning Appeals, City of Willoughby, Ohio, on June 9, 2004. At this hearing, testimony was given by Joe Scott, representing Steak `n Shake; Attorney Ben Ochner, representing Burger King; Debbie Rhodes, manager at Burger King; and Tom Katoch, owner of the Dairy Queen on Euclid Avenue. The zoning board granted Steak `n Shake's requested variance.
 {¶ 5} Burger King appealed the zoning board's decision to the court of common pleas, pursuant to R.C. 2506.04. On June 16, 2005, the court affirmed the zoning board's decision granting the variance.
 {¶ 6} Burger King timely appeals and raises the following assignments of error:
 {¶ 7} "[1.] The trial court erred by failing to consider, and by disregarding the BZA's failure to consider, each of the factors prescribed in the city's code.
 {¶ 8} "[2.] The trial court erred by holding that evidence that Steak N Shake's customers will park on adjoining and nearby property at peak hours supports the BZA's decision.
 {¶ 9} "[3.] The trial court's decision was not supported by a preponderance of reliable, probative, and substantial evidence."
 {¶ 10} When a trial court reviews the decision of a board of zoning appeals, the court "may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative and substantial evidence. An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. "While the court of common pleas has the power to weigh the evidence, an appellate court is limited to reviewing the judgment of the common pleas court strictly on questions of law." Akwen, Ltd. v.Ravenna Zoning Bd. of Appeals, 11th Dist. No. 2001-P-0029, 2002-Ohio-1475, at ¶ 17 (citation omitted).
 {¶ 11} The standard for granting an area variance requires the applicant to demonstrate "practical difficulties"; i.e. "the property owner is required to show that the application of an area zoning requirement to his property is inequitable." Duncanv. Middlefield (1986), 23 Ohio St.3d 83, 86, citing Kisil,
12 Ohio St.3d at syllabus; Willoughby Codified Ordinances 1109.09(b).
 {¶ 12} "The following factors shall be considered and weighed by the Board [of Zoning Appeals] in determining practical difficulty: (1) Whether special conditions and circumstances exist which are peculiar to the land or structure involved and which are not applicable generally to other lands or structures in the same zoning district; examples of such special conditions or circumstances are: exceptional irregularity, narrowness, shallowness or steepness of the lot, or adjacency to nonconforming and inharmonious uses, structures or conditions; (2) Whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (3) Whether the variance is substantial and is the minimum necessary to make possible the reasonable use of the land or structures; (4) Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer substantial detriment as a result of the variance; (5) Whether the variance would adversely affect the delivery of governmental services such as water, sewer, trash pickup; (6) Whether special conditions or circumstances exist as a result of actions of the owner; (7) Whether the property owner's predicament feasibly can be obviated through some method other than a variance; (8) Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting a variance; and (9) Whether the granting of the variance requested will confer on the applicant any special privilege that is denied by this regulation to other lands, structures, or buildings in the same district." Willoughby Codified Ordinances 1109.09(b).[2]
 {¶ 13} In its judgment entry affirming the zoning board's decision to allow the variance, the trial court made the following findings regarding these factors. With respect to the first factor, the court, contrary to the zoning board, did not find the property in question to be exceptionally narrow or peculiar, while acknowledging that "the parcel's narrow shape was a factor that was considered by the [zoning] board." With respect to the second factor, the court affirmed the zoning board's finding that the lot was vacant but noted that there was no evidence put before the zoning board "that the property had no other beneficial uses if the variance was not granted." Under the third factor, the court noted that the zoning board determined that a twenty-seven percent reduction in the required number of off-street parking spaces was not substantial. The evidence before the zoning board regarding these factors included testimony that the average number of parking spaces at more than 420 Steak `n Shake restaurants in the United States was 53 spaces and that the Steak `n Shake restaurant operating in Mentor provided 57 parking spaces; that the intersection (Euclid Avenue and SOM Center Road) is very busy and congested and there is limited parking during peak hours. However, the zoning board concluded that there was sufficient adjacent parking to handle the overflow parking at peak hours.
 {¶ 14} With respect to the fourth factor, the trial court found little evidence that the essential character of the neighborhood would be altered, as there were already several restaurants with drive-thru facilities in the commercially zoned area. The court acknowledged Burger King's concern that customers at Steak `n Shake would use its parking lot, which Burger King had recently upgraded at a cost of $70,000. The court noted the zoning board's conclusion that "while some Steak `n Shake customers might [use Burger King's parking lot] during peak business hours, there was other nearby parking and that the adjoining properties would not suffer a substantial detriment as result of the variance."[3] With respect to the fifth and sixth factors, the court found clear evidence that the delivery of government services would not be affected by granting the variance and that Steak `n Shake intended to purchase the property with knowledge of the off-street parking requirements.
 {¶ 15} Under the seventh factor, the court addressed Burger King's argument that Steak `n Shake's need for a variance could be obviated by reducing the size of the proposed restaurant from 4,111 square feet to about 3,000 square feet. "Essentially," Burger King's argument is "that Steak `n Shake is building too large a restaurant for the location and that in view of the highly congested traffic and parking in the area, any relaxation in the city's parking requirement was not appropriate." The court, however, adopted the zoning board's conclusions "that the Steak `n Shake restaurant and Burger King were slightly different restaurants with possibly different traffic patterns"; "that adjacent office building parking lots could handle the occasional peak parking demand"; and "that [Burger King] failed to present clear evidence that adjoining properties would suffer a substantial detriment."[4]
 {¶ 16} Under the eighth factor, the trial court addressed Burger King's argument that "it was inequitable to ease the parking requirements for Steak `n Shake after forcing it to upgrade their parking lot seven years ago at a cost of $70,000." As did the zoning board, the court noted the following testimony from the hearing relative to this issue: "[M]ost of the upgrade involved correcting the drainage system so that heavy rainfalls wouldn't flood the sewer system. While the upgrade added 29 parking spaces, this addition put Burger King's parking spaces considerably over the minimum required by § 1161.04(c)(5) of the Codified Ordinances of the City of Willoughby. The [zoning board] was unable to determine how much of the $70,000 was spent on additional parking and whether the additional parking spots were required by the city. The [zoning board] noted that there was no evidence Burger King applied for a variance rather than create the additional parking spaces."
 {¶ 17} The trial court did not expressly consider the ninth factor set forth in the Willoughby zoning code.
 {¶ 18} In its first assignment of error, Burger King argues that the trial court failed to consider the nine mandatory factors in Willoughby Codified Ordinances 1109.09(b) and, likewise, disregarded the zoning board's failure to consider those factors. Specifically, Burger King maintains that the court failed to consider whether the requested variance was "the minimum necessary to make possible the reasonable use of the land," whether "special conditions or circumstances exist as a result of actions of the owner," whether there could be "any beneficial use of the property without the variance," and whether allowing the variance would confer on Steak `n Shake a "special privilege that is denied by this regulation to other lands."
 {¶ 19} The appellees argue that the zoning board and, therefore, the common pleas court, only needs to consider the factors contained in Section 1109.09(b), and not make express findings as to each factor. The appellees rely on Willoughby Codified Ordinance 1109.09(f), which provides that, in considering a variance request, the zoning board shall "make a finding in writing that the reasons set forth in the application justify the granting of the variance that will make possible a reasonable use of the land, building or structure."
 {¶ 20} We agree with the appellees that a zoning board is not required to make express findings as to each factor that it is required to consider. The standard for granting an area variance is that of "practical difficulties." The factors the zoning board must consider may or may not be relevant in rendering its decision as to whether "practical difficulties" exist. In weighing these factors, it has often been observed that no single factor is dispositive or controlling. Duncan,23 Ohio St.3d at 86; Roberts v. Lordstown (July 10, 1998), 11th Dist. No. 97-T-0149, 1998 Ohio App. LEXIS 3163, at *9. Nor is there any requirement that the factors be applied mathematically. Winfieldv. Painesville, 11th Dist. No. 2004-L-053, 2005-Ohio-3778, at ¶ 28. "Different facts will require that different questions be asked and different factors to be considered, sometimes more, sometimes fewer, but in no two cases must the factors considered necessarily be the same." Trent v. German Twp. Bd. of ZoningAppeals (2001), 144 Ohio App.3d 7, 18.
 {¶ 21} When a trial court reviews the zoning board's decision, it must determine if the zoning board's decision is supported by a preponderance of the evidence. "The key term is `preponderance.' If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand." Dudukovich v. Lorain Metro.Housing Auth. (1979), 58 Ohio St.2d 202, 207. Accordingly, the focus of the trial court's review is on the decision made by the zoning board, not on the board's professed reasons for that decision. Although the trial court is bound to consider the board's reasons for its decision, it is not beholden to that reasoning, except in the resolution of factual disputes.
 {¶ 22} In the present case, the trial court acknowledged that, although "the factors outlined in § 1109.09(b) of the Codified Ordinances * * * were not specifically addressed during the hearing, the record shows that the [zoning board] considered them." Based on the evidence presented at the hearing, the trial court then carefully went through the factors contained in Section 1109.09(b), only omitting the ninth factor. In substance, however, the trial court did consider whether Steak `n Shake was being granted "special privilege" denied to others when it found that Burger King had exceeded the zoning code's parking requirements and choose to do so rather than request a variance.
 {¶ 23} Burger King also relies on this court's decision inWinfield for the proposition that the court and zoning board must affirmatively demonstrate that they considered all the enumerated factors. Cf. Winfield, 2005-Ohio-3778, at ¶ 27 (noting that "[c]onsideration of substantial justice" as a factor was "mandated" by the municipal zoning code and, therefore, its consideration "was mandatory"). Again, we must make a distinction between consideration of a factor and making an express finding regarding that factor. In Winfield, consideration of the substantial justice of granting the variance was essential to the trial court's decision where many of the other factors supported denying the variance. While it is true that consideration of this factor was mandatory, its weight and prominence in the trial court's decision were dictated by the peculiar facts and circumstances in the Winfield case. Given a different set of facts, we would not have reversed the trial court for not expressly making a finding regarding substantial justice where such a consideration was not relevant to the court's decision.
 {¶ 24} For the foregoing reasons, we find that the failure of the trial court to expressly consider every factor set forth in section 1109.09(b) does not, as a matter of law, render its decision unsupported by a preponderance of reliable, probative and substantial evidence. Burger King's first assignment of error is without merit.
 {¶ 25} In its second assignment of error, Burger King argues that the trial court erred by upholding the zoning board's decision based on evidence that the inadequate parking at the proposed Steak `n Shake will result in customers parking in the Burger King lot and at the lots of adjacent office buildings. Burger King maintains that this evidence supports denying the variance, citing to cases where parking variances have been denied based on the detriment to neighboring properties.Interstate Tool Corp. v. Cleveland (May 6, 1991), 8th Dist. No. 58384, 1991 Ohio App. LEXIS 2279; Ingle Inn, Inc. v. Brook Park
(Jan. 19, 1989), 8th Dist. Nos. 54838 and 54839, 1989 Ohio App. LEXIS 191.
 {¶ 26} We disagree with Burger King's reading of the trial court's judgment entry. The trial court was not endorsing trespass by Steak `n Shake customers upon Burger King's property as justification for granting the parking variance. The trial court acknowledged in several parts of its decision that "substantial evidence" existed that "the area becomes quite congested and parking becomes quite limited during peak business hours." The trial court noted, however, that "patrons of existing restaurants are already parking in the parking lots of nearby office buildings." The trial court's conclusion was that patrons of Steak `n Shake could do the same. Although the court recognized that it was likely some Steak `n Shake customers might use Burger King's lot, this was not deemed a substantial detriment to Burger King because of the availability of additional parking in the adjacent office building lots.
 {¶ 27} Burger King's second assignment of error is without merit.
 {¶ 28} Under its third assignment of error, Burger King maintains that the trial court's decision was not supported by a preponderance of reliable, probative, and substantial evidence. Burger King raises several arguments under this assignment of error.
 {¶ 29} Burger King initially argues that the trial court failed to independently examine the evidence before the zoning board, but, rather, confined its analysis to reciting the zoning board's conclusion. Burger King also argues that the trial court adopted arguments from appellees' brief and stated these arguments as conclusions of the zoning board. We note that the trial court's analysis of the issues was much more extensive than the zoning board's and demonstrates the court's independent consideration of the evidence. While the court's decision incorrectly credits the zoning board for certain conclusions, this is not reversible error. The trial court is free to adopt arguments from the zoning board and/or the parties before it in addition to reaching its own conclusions. The concern of this court is that a judgment be supported by a preponderance of reliable, probative, and substantial evidence, not the ultimate source of the arguments.
 {¶ 30} Burger King's final argument is that the decision to grant the variance is not supported by a preponderance of reliable, probative, and substantive evidence. Burger King maintains that any reasonable assessment of the evidence before the zoning board mandates that the variance be denied. The main points of Burger King's argument are as follows:
 {¶ 31} Burger King argues that there is nothing exceptional about the size of the property that merits special consideration from the zoning board. The only practical difficulties that Steak `n Shake faces are those created by Steak `n Shake's proposed design plan. Steak `n Shake's plan for a 4,111 square-foot restaurant with seating for 99 persons and a drive-thru is too large for the property at issue. Moreover, neither the zoning board nor the common pleas court considered whether a smaller restaurant would be economically feasible or whether there were other possible uses for the property. Burger King noted that the size of its restaurant is 3,325 square feet with seating for 92 persons and the Dairy Queen restaurant is approximately 3,000 square feet with seating for 90 persons.
 {¶ 32} Burger King takes exception to the trial court's conclusions that neither the size of the variance nor the detriment to adjoining properties is "substantial." Burger King maintains that a variance of 27% in the required number of parking spaces is substantial, particularly given the trial court's acknowledgement that the area is congested and parking already limited. Burger also notes that this court, in another context, has held that a variance of 25% from the minimum lot size is substantial. Thompson v. Ravenna Bd. of Zoning Appeals
(Dec. 31, 1996), 11th Dist. No. 95-P-0082, 1996 Ohio App. LEXIS 5945, at *8-*9. The trial court relied on testimony that the average number of parking spaces at Steak `n Shakes nationwide is 53 and that the Steak `n Shake restaurant in Mentor has 57 parking spaces. Burger King argues that this testimony is meaningless because it was not supported by testimony regarding the average size of the Steak `n Shake's other restaurants or their seating capacity.
 {¶ 33} Finally, Burger King argues that it is inherently unfair to allow Steak `n Shake to build a larger restaurant with a below-code number of parking spaces, when smaller restaurants such as Burger King and Dairy Queen have complied with the code's parking requirements.
 {¶ 34} Burger King has raised several compelling arguments for denying Steak `n Shake's variance request. However, much of Burger King's argument requires us to re-weigh the evidence before the trial court, which this court is not permitted to do. Reviewing the trial court's decision, we find that the lower court acknowledged and considered, but ultimately rejected the arguments raised by Burger King. The trial court was swayed by other considerations, such as the ability of the adjoining office buildings to handle overflow parking, the fact that a drive-thru would decrease Steak `n Shake's need for parking, that the property is currently vacant and unsightly and that a restaurant "would put the property to productive use consistent with the character of the neighborhood." Based on this record, we cannot conclude, as a matter of law, that the trial court's decision was unsupported by a preponderance of reliable, probative, and substantial evidence.
 {¶ 35} The third assignment of error is without merit.
 {¶ 36} For the foregoing reasons, the decision of the Lake County Court of Common Pleas, affirming the grant of an area variance in favor of appellee, Steak `n Shake, is affirmed.
Ford, P.J., O'Neill, J., concur.
[1] Willoughby's zoning code requires that "table service" restaurants provide for "1 [off-street parking] space per 50 sq. ft. of floor area or 1 space for every 2 seats of seating capacity, whichever is greater." Willoughby Codified Ordinances 1161.04(c)(5).
[2] These factors incorporate and expand upon a list of seven, non-exclusive factors to be considered in determining whether "practical difficulties" exist set forth by the Ohio Supreme Court in Duncan v. Middlefield (1986), 23 Ohio St.3d 83, at syllabus: "1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance."
[3] At the hearing on Steak `n Shake's variance request, one of the members of the board of zoning appeals suggestedhat Burger King could be a "good neighbor" regarding the parking situation by countenancing trespass upon its property by Steak `n Shake customers. This comment was improper and would not have served as grounds for granting the variance. See Interstate Tool Corp. v.Cleveland (May 16, 1991), 8th Dist. No. 58384, 1991 Ohio App. LEXIS 2279 (increased trespass on neighboring parking lots is grounds for denying a parking variance). The trial court properly acknowledged the possibility of trespass, but found that the potential detriment would not be substantial.
We further note that there was a considerable amount of personal opinion presented as evidence at the hearing, such as the observations that the intersection in question is one of the busiest in Lake County and that there do not seem to be parking problems at the Steak `n Shake in Mentor. Such subjective and unsubstantiated statements do not constitute reliable, probative, and substantial evidence as to support the board's decision, either for or against the variance. See ATT Wireless Servs.,Inc. v. Streetsboro (June 26, 1998), 11th Dist. No. 97-P-0070, 1998 Ohio App. LEXIS 2905, at *18-*20, and the cases cited therein. Members of the board should refrain from such comments during hearings before it.
[4] Again, although the language "that adjacent office building parking lots could handle the occasional peak parking demand" inappropriately suggests the countenancing of trespass, the trial court qualified this statement by pointing out the failure of evidence that adjoining properties would suffer substantial detriment as a result of potential overflow parking. We note that in related litigation regarding Steak `n Shake's conditional use permit to construct a drive-thru, the owner of the adjoining office building testified unequivocally that restaurant patrons did not have permission to use office building parking.