[Cite as *Dutton v. Chardon*, 2013-Ohio-5805.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**GEAUGA COUNTY, OHIO**


| | | |
|---|---|---|
| JOHN DUTTON, et al., | : | **O P I N I O N** |
| Appellants, | : | |
| - vs - | : | **CASE NO. 2012-G-3102** |
| CITY OF CHARDON PLANNING COMMISSION, et al., | : | |
| | : | |
| Appellees. | | |


Administrative Appeal from the Geauga County Court of Common Pleas, Case No. 11A001348.

Judgment: Affirmed.


*Joseph R. Klammer,* The Klammer Law Office, LTD., Lindsay II Professional Center, 6990 Lindsay Drive, #7, Mentor, OH 44060 (For Appellants).

*James M. Gillette,* Chardon Village Law Director, National City Bank Building, 117 South Street, #208, Chardon, OH 44024 (For Appellees).


COLLEEN MARY O'TOOLE, J.

{¶1} Appellants, John Dutton and George Baker, appeal from the August 6, 2012 judgment of the Geauga County Court of Common Pleas, affirming the decisions of appellee, city of Chardon Planning Commission ("Planning Commission"), which approved the construction, concept plan, and variances for a service garage and related structures located in a low density residential district.

{¶2}  In 2008, a street department garage owned by appellee, city of Chardon ("City"), was destroyed by fire.  Since that time, the City has been using a temporary facility.  In 2009, the City purchased eight acres of real property located in the R-2 low density residential district on U.S. Route 6.  The City wishes to construct a service garage and related accessory buildings on that property.

{¶3}  Specifically, the project consists of the following structures to be included: (1) a service building or garage to house and service dump trucks, snow plows, lawn tools, and equipment; (2) a 27 foot high road salt storage building; and (3) cold and bulk storage buildings.  The real property borders a parcel used for storage of excavating equipment and materials, the City's sewage treatment plant, vacant residential sub lots, an undeveloped 20 acre parcel, and a single-family residence.  Commercial and residential properties are located across the street.

{¶4}  On November 21, 2011, the City applied for a conditional use permit, approval of a concept plan, and two variances.  It is the City's position that the proposed garage, salt storage building, and other structures be allowed as a public safety facility.

{¶5}  On December 6, 2011, the Planning Commission held a special meeting on the City's application.  The Planning Commission determined that the proposed structures and uses constitute a "public safety facility" under Section 1133.03(e)(3)(F) of the City's Planning and Zoning Code, and are necessary to serve the "immediate surrounding area" under Section 1145.13(x).  Thus, the Planning Commission (1) approved the construction of a service garage, salt storage building, and storage buildings as a conditional use in the R-2 district; (2) approved the concept plan for the service garage, salt storage building, and storage bins; and (3) authorized variances

2

permitting the salt storage building, cold storage building, and bulk storage building to be located in the front yard of the real property. At its regular meeting on December 20, 2011, the Planning Commission approved the minutes from the special meeting.

{¶6} On December 30, 2011, appellants, two property owners in the City's R-2 district, filed an administrative appeal in the Geauga County Court of Common Pleas pursuant to Chapter 2506 of the Ohio Revised Code. It is appellants' position that the proposed buildings, structures, and uses are not a "public safety facility" and cannot be permitted within an R-2 low density residential district.

{¶7} Pursuant to its August 6, 2012 judgment, the trial court affirmed the December 6, 2011 decisions of the Planning Commission. The court found in its decision that the Planning Commission's determination that the proposed structures and uses fall within the definition of a "public safety facility" is not unconstitutional, illegal, arbitrary, capricious, or unreasonable. Thus, the court determined that the proposed service garage, salt storage building, and other structures may be authorized as a conditional use in the R-2 low density residential district. The court also determined that the Planning Commission's authorization of the variances sought by the City is not unconstitutional, illegal, arbitrary, capricious, or unreasonable or unsupported by a preponderance of reliable, probative evidence.

{¶8} Appellants filed a timely appeal with this court asserting the following assignment of error for our review:

**{¶9}** "The trial court committed reversible error when it denied Appellants' administrative appeal."

**{¶10}** Before we address appellants' assignment of error and issues, we must consider our standard of review.

**{¶11}** "First, upon review of an administrative appeal, a court of common pleas considers whether the decision to grant or deny a certificate is supported by 'the preponderance of substantial, reliable, and probative evidence on the whole record.' R.C. 2506.04. This court's review of the judgment of the trial court is more limited than that of the court of common pleas. *Henley v. City of Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 * * * (2000). This court's review is whether, as a matter of law, the decision of the court of common pleas is supported by a preponderance of reliable, probative, and substantial evidence. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 * * * (1984). '"While the court of common pleas has the power to weigh the evidence, an appellate court is limited to reviewing the judgment of the common pleas court strictly on questions of law."' *Carrolls Corp. v. Willoughby Bd. of Zoning Appeals*, 11th Dist. Lake No. 2005-L-110, 2006-Ohio-3411, ¶10, quoting *Akwen, Ltd. v. Ravenna Zoning Bd. of Appeals*, 11th Dist. Portage No. 2001-P-0029, 2002-Ohio-1475, ¶17." *Sumner v. Kent,* 11th Dist. Portage Nos. 2012-P-0019, 2012-P-0020, and 2012-P-0021, ¶12. (Parallel citations omitted.)

**{¶12}** Regarding area variances, the "practical difficulties" standard was originally recognized in *Kisil, supra,* and later fully discussed in *Duncan v. Middlefield*, 23 Ohio St.3d 83 (1986). In *Duncan*, the Ohio Supreme Court stated:

4

**{¶13}** "The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (*e.g.,* water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." *Id.* at syllabus.

**{¶14}** At the outset, we determine the trial court properly weighed and considered the *Duncan* factors applicable in this matter. As this court has recognized, although evidence may be submitted to support both sides of the issue, a trial court is obligated to defer to the determination of the board or commission, "'so long as it was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence.'" *Sumner, supra,* at ¶23, quoting *Schultz v. Village of Mantua*, 11th Dist. Portage No. 2011-P-0054, 2012-Ohio-1459, ¶28. Specifically, in its August 6, 2012 judgment, the trial court stated the following:

5

{¶15} "There is no requirement that all or even a majority of the *Duncan* factors must be met before area variances are authorized by a board of zoning appeals or a planning commission. It is incumbent upon the applicant for a variance to demonstrate the existence of any *Duncan* factors and it [is] the duty of the board or commission to weight determine if such factors exist and weight those factors against the zoning regulations.

{¶16} "The transcript of the proceedings before the Chardon Planning Commission and the Findings adopted by the Planning Commission show that the City presented evidence of the factors and the Commission considered those factors in authorizing variances. It is this Court's determination that the Planning Commission's authorization of the variances sought by the City is not unconstitutional, illegal, arbitrary, capricious, or unreasonable or unsupported by a preponderance of reliable, probative evidence contained within the transcript of the hearing before the Planning Commission."

{¶17} Upon consideration, we cannot say that the trial court erred in finding substantive, reliable, and probative evidence to support the Planning Commission's decision.

{¶18} Turning to appellants' three issues under their sole assignment of error, appellants argue in their first issue that "[t]he trial court confused the issue of the conditional use permit application with the various requested variances and thereby failed to apply the proper standard on review." They allege that the trial court either failed to address the issues on the conditional use application or confused the conditional use issue with the variance applications related to the service garage

6

structure itself.  Appellants assert that this "confusion" of a variance application and a conditional use permit application and the application of the wrong legal standard requires reversal.

{¶19}  To support their arguments, appellants cite to *Three Wide Entertainment v. City of Athens Bd. of Zoning Appeals*, 194 Ohio App.3d 1, 2011-Ohio-2304 (4th Dist.2011).  However, appellants' reliance on that case is misplaced.  In *Three Wide*, the board denied zoning permits to establish an adult entertainment business on property located in the city's general business zone.  *Id.* at ¶1.  The court of common pleas vacated the board's decision denying the permits after concluding that the board had applied the wrong legal standard.  *Id.*  The court set forth the distinctions and contrasted the standards of review by common pleas courts and appellate courts under *Kasil.*  *Id.* at ¶6-10.  The Fourth District affirmed the trial court's decision after determining that the trial court applied the correct legal standard and did not abuse its discretion in finding the board applied the wrong standard.  *Id.* at ¶21.

{¶20}  Unlike *Three Wide*, in our case, appellants are not arguing that the Planning Commission applied the wrong legal standard.  Rather, appellants allege that the trial court applied the wrong standard.  Contrary to appellants' assertion, the standard of review for the court of common pleas and the court of appeals is not identical.  *Kisil, supra,* at 34.  Again, this standard of review distinction was even set forth in *Three Wide,* the case appellants cite to in support of their arguments on appeal. *Three Wide, supra,* at ¶6-10.

{¶21}  As stated, R.C. 2506.04 governs the procedure for administrative appeals. The common pleas court has the ability to weigh the evidence and may find that the

7

order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. *Kisil, supra,* at 34. An administrative appeal to the court of appeals, however, is limited to reviewing the judgment of the common pleas court strictly on questions of law. *Id.* R.C. 2506.04 requires the court of appeals to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision is not supported by a preponderance of reliable, probative and substantial evidence. *Id.*

{¶22} Contrary to appellants' contention, the trial court clearly delineated in its decision the separate issues related to the issuance of the conditional use permit and the variances, and analyzed them separately. There is no indication the court employed an improper legal standard in the analysis of either. Nothing in the decision or judgment below suggests that a standard of review other than that required under R.C. 2506.04 was followed. In upholding the Planning Commission's determination, the trial court differentiated between the conditional use and variances in its decision and judgment, referred to and affirmed approval of the conditional use numerous times, and applied the proper standard of review. Thus, we find that the court's decision is supported by a preponderance of reliable, probative, and substantial evidence.

{¶23} Appellants' first issue is without merit.

{¶24} In their second issue, appellants allege that "[t]he proposed service garage is not a use allowed as a conditional use as a 'safety facility' in this residential district." They maintain that the proposed service garage is not a "public safety facility" as contemplated by Section 1133.03(e)(3)(F) of the City's Planning and Zoning Code.

8

**{¶25}** The property at issue is zoned R-2 low density residential. A "public safety facility" is permitted as a conditional use in an R-2 district under Section 1133.03(e)(3)(F). Section 1103.03(b)(167) defines a "public safety facility" as "[a] municipal or government facility for public safety and emergency services including, but not limited to, a facility that provides police or fire protection and related administrative facilities."

**{¶26}** Appellants maintain that the proposed garage is a "public service facility." Section 1103.03(b)(168) defines a "public service facility" as "[b]uildings, power plants or substations, water treatment plants or pumping stations, sewage treatment, disposal or pumping plants and other similar structures operated by a public utility, by a railroad, whether publicly or privately owned, or by a municipal or other government agency, to produce and provide electric, gas, rail transport, communication, water and sewerage treatment services."

**{¶27}** We note that there is no definition of "service garage" in the City's Planning and Zoning Code. The issue here is not whether such garage and related structures are a "safety facility" or "service facility" but whether they fall within either of the above defined uses allowed by the City's Planning and Zoning Code. Contrary to appellants' argument, the garage is not a "public service facility" under Section 1103.03(b)(168) because it is not a building or structure "operated by a public utility, by a railroad, whether publicly or privately owned, or by a municipal or other government agency, to produce and provide electric, gas, rail transport, communication, water and sewerage treatment services." Rather, the garage falls within the defined use of "municipal or government facility for public safety" under Section 1103.03(b)(167).

9

{¶28} The intended use of the garage is for the storage and maintenance of vehicles and the storage of equipment and materials used primarily by the street department. Snow plows, trucks, street equipments, road salt, materials, and the like, are all directly related to public safety. Thus, the structures that house those items constitute a "public safety facility."

{¶29} Section 3, Article XVIII of the Ohio Constitution states: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

{¶30} Thus, by virtue of Section 3, Article XVIII of the Ohio Constitution, the City has the authority to construct a facility to protect the health, safety, and welfare of its residents. The facility at issue complies with Ohio law which requires the City to repair and maintain its streets routinely and in emergency situations so that they are safe for passage by the public. Based on the facts presented, we uphold the trial court's finding that the proposed garage is allowed as a conditional use.

{¶31} Appellants' second issue is without merit.

{¶32} In their third issue, appellants contend that "[e]ven if the proposed service garage was allowed as a conditional use, the decision of the Planning Commission that the requirement as being necessary to serve the 'immediate surrounding area' as required by Section 1145.13(X) was satisfied is not supported by any evidence." They allege that the proposed garage is designed to serve the needs of the entire municipality, not just the immediate surrounding area.

10

{¶33} Section 1145.13(x)(1) of the City's Planning and Zoning Code states that the use of a "public safety facility" in a residential zoning district "shall be limited to structures that are essential for the distribution of public services to the immediate surrounding area."

{¶34} Appellants' interpretation of "immediate surrounding area" being less than the municipal corporate limits, i.e., limiting it only to a "neighborhood" within the City, is unreasonable. As already determined, the proposed garage and related structures constitute a "public safety facility." The phrase at issue, "immediate surrounding area," is not defined in the City's Planning and Zoning Code. Looking to another source, an "area," as applicable in this case, is defined as "a particular extent of space or surface," or as "a geographic region." *Merriam-Webster Dictionary*, http://www.m-w.com. A "neighborhood," on the other hand, is defined as an "immediate vicinity," "a community within a larger group," and "[t]he condition of being close together." *Black's Law Dictionary* 849 (7th Ed.2000). Thus, an "immediate surrounding area" includes a greater geographic area than an "immediate neighborhood."

{¶35} The evidence establishes the City's small population and philosophy of expansion. The City's zoning district map shows the dimensions and geographic area of the City, which includes one municipal center, one sewage treatment plant, one water treatment plant, and one police station. Taking these facts into consideration, we uphold the trial court's finding that the proposed garage and related structures will serve the "immediate surrounding area," or geographic region of the City, and thus comply with Section 1145.13(x)(1). We fail to see that the trial court did not consider this issue or that it erred in rendering its decision.

11

{¶36} Appellants' third issue is without merit.

{¶37} For the foregoing reasons, appellants' assignment of error is not well-taken. The judgment of the Geauga County Court of Common Pleas is affirmed. It is ordered that appellants are assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.