O’Neill, J.
{¶ 1} Plaintiffs-appellants, the Boices, owned a piece of real estate adjacent to their suburban residence for over 30 years. In 2004, defendant-appellee village of Ottawa Hills denied their request for a variance seeking to have the vacant 33,000-square-foot residential lot declared a “buildable” lot. The zoning code at that time included a requirement that no structure could be built on a lot smaller than 35,000 square feet, which was 2,000 square feet larger than the lot owned by plaintiffs. This new size restriction was enacted in 1978, four years after plaintiffs purchased the lot. When the lot was purchased in 1974, the minimum buildable lot size was 15,000 square feet. Plaintiffs also owned the adjoining lot, upon which their residence was situated. It is undisputed that other landowners in the village built homes on lots smaller than 35,000 square feet subsequent to the 1978 change in zoning regulations.
I. Facts and Procedural History
{¶ 2} The two plaintiffs in this case, Willis and Annette Boice, purchased two adjacent lots in the village of Ottawa Hills in 1974. One of the lots contained a house, and the other was vacant. Plaintiffs lived in that house for the next 30 years. The lot with the house was 57,000 square feet, and the vacant lot was 33,000 square feet.[1] The minimum size for a buildable lot in 1974 was 15,000 square feet.
{¶ 3} In 1978, the village amended its zoning requirements to increase the buildable-lot size to 35,000 square feet. Then, in 2004, plaintiffs sold the lot containing their residence. They sought approval from the village manager to *413 have the smaller lot declared a buildable lot so that they could sell that as well. The village manager denied their request, informing them that because the lot was smaller than 35,000 square feet, it was not a buildable lot. This decision was reached despite the fact that there were other houses in plaintiffs’ plat that were built on lots smaller than 35,000 square feet after the 1978 zoning amendment.
{¶ 4} Plaintiffs appealed that decision to defendant-appellee Ottawa Hills Zoning Commission, also seeking a variance, but their appeal and the variance were denied. On October 20, 2004, plaintiffs filed an appeal pursuant to R.C. 2505.01 et seq. and 2506.01 et seq. in the Lucas County Common Pleas Court. The court upheld the zoning commission’s decision, finding that the zoning amendment was not unconstitutional, that there was no taking, and that the denial of the variance was supported by the record. That decision was appealed to the Sixth District Court of Appeals, which determined that the trial court had used the incorrect standard in its regulatory-taking analysis and, therefore, reversed and remanded for further proceedings. Boice v. Ottawa Hills, 6th Dist. Lucas No. L-06-1208, 2007-Ohio-4471, 2007 WL 2458488.
{¶ 5} The matter went back to the trial court on remand to address the issue of a regulatory taking. On August 28, 2009, the trial court determined that a taking had not occurred because plaintiffs never took any affirmative steps to build a house on the lot. This decision was appealed to the Sixth District Court of Appeals, which ultimately affirmed the decision. Boice v. Ottawa Hills, 6th Dist. Lucas No. L-09-1253, 2011-Ohio-5681, 2011 WL 5316787. The appellate court acknowledged that plaintiffs had been paying property taxes on the lot as a buildable lot for over 30 years. It also recognized that in the middle of the present controversy, the Lucas County auditor reappraised the property in 2006 and reduced the market value from $233,500 to $23,400, presumably because the lot was no longer considered buildable. Yet the trial court and the appellate court concluded that because the plaintiffs had never used the vacant parcel as a buildable lot, they never acquired a vested right to use the land as a buildable lot. For the following reasons, we disagree.
{¶ 6} The disparate treatment of plaintiffs, combined with the de minimis difference between the size of the lot and the minimum required size and the provision in a village ordinance that requires the village to “grandfather in” plaintiffs’ lot as a buildable lot lead us to the conclusion that the trial court’s decision was unreasonable and arbitrary and, accordingly, was an abuse of discretion. Hence, the decision of the appellate court must be reversed.
II. Analysis
{¶ 7} The trial court’s standard for reviewing an administrative appeal is whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and *414 probative evidence in the record. Henley v. Youngstown Bd. of Zoning Appeals, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000); R.C. 2506.04. Then, on appeal, an appellate court conducts a more limited review. The appellate court reviews the trial court’s decision only on questions of law to determine whether the lower court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence. Kisil v. Sandusky, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).
{¶ 8} Plaintiffs have set forth two propositions of law, but the second one is dispositive of this appeal and, accordingly, it will be addressed first. Plaintiffs contend that they had a vested right in the lot’s status as buildable that continued beyond the 1978 zoning amendment. We agree. This argument is, in reality, a grandfathering-in claim.
{¶ 9} Under the theory espoused by plaintiffs, the two lots they purchased in 1974 were undisputedly buildable lots at the time of purchase. Whether or not plaintiffs ever intended to build on the vacant lot is irrelevant. It was purchased as a buildable lot, they paid for and received a buildable lot, and they paid taxes on it for over 30 years as a buildable lot. In short, the village simply had a change of heart in 1978 and decided to make this particular lot, as opposed to its neighbors, worthless. For the Sixth District Court of Appeals to conclude that it was not a buildable lot because plaintiffs never actually began construction on the lot between the 1974 purchase and the 1978 zoning amendment is contrary to law. It ignores well-settled land-ownership rights in this country.
{¶ 10} In regard to the principles of zoning, this court has stated that, generally, “[z]oning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled,” and, accordingly, “such resolutions are ordinarily construed in favor of the property owner.” Saunders v. Clark Cty. Zoning Dept., 66 Ohio St.2d 259, 261, 421 N.E.2d 152 (1981). There is a balancing that takes place between an owner’s use of his private property and the necessity of government to exercise its power in the best interests of the public. In Gerijo, Inc. v. Fairfield, 70 Ohio St.3d 223, 225, 638 N.E.2d 533 (1994), this court stated:
[T]he Ohio Constitution explicitly subjects the right of an individual to use and enjoy his or her property to the legitimate exercise of local police power. See Section 3, Article XVIII. Inasmuch as the exercise of police power interferes with individual rights, the use of such power must bear a substantial relationship to a legitimate government interest and must not be unreasonable or arbitrary.
*415 With this in mind, we will address the specific facts in the present case.
{¶ 11} The lots in this section of Ottawa Hills were platted in 1926 when the minimum square footage for a buildable lot was 15,000 square feet. In 1973, prior to plaintiffs acquiring these lots, the previous owner transferred part of one lot to the other lot to accommodate a driveway. This was done with the approval of the village. The end result was that there were still two lots that exceeded the 15,000-square-foot requirement, thereby qualifying as buildable lots. Plaintiffs purchased the two lots in 1974, and everyone agrees that plaintiffs could have built a house on the smaller lot, without seeking a variance, at any time up until the zoning amendment in 1978, which increased the minimum buildable lot size to 35,000 square feet.
{¶ 12} After 1978, several property owners with lots that had been platted in 1926 and that were smaller than 35,000 square feet built residences on their lots. The only difference between plaintiffs’ lot and the others is that the other lots were all unchanged since 1926, whereas plaintiffs’ parcel had been changed in size in 1973. However, defendants are unable to explain why this fact justifies the disparate treatment. Even with the changes approved by the village in 1973, the lots that plaintiffs purchased in 1974 were platted, buildable lots, with no cognizable differences from the other lots that had been platted 47 years earlier.
{¶ 13} Yet the zoning commission, the trial court, and the Sixth District concluded that the village had correctly denied plaintiffs’ request to have their lot declared to be a buildable lot. In Kisil v. Sandusky, 12 Ohio St.3d 30, 465 N.E.2d 848, syllabus, this court held that the standard for granting a variance for area requirements is a lesser standard than when a use variance is at stake: the applicant need only show practical difficulties rather than unnecessary hardship. This court has stated:
[T]he factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner’s predicament feasibly can be obviated *416 through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.
Duncan v. Middlefield, 23 Ohio St.3d 83, 491 N.E.2d 692 (1986), syllabus.
{¶ 14} When these questions are overlaid against the facts in this case, it becomes evident that plaintiffs demonstrated that they have encountered practical difficulties as a result of the 1978 zoning amendment, and their request for a variance should have been granted. Clearly, when, as here, a lot in a residential neighborhood has been deemed unbuildable, the pool of potential buyers would almost certainly be limited to adjoining property owners, and its value would be much reduced. Additionally, the variance is not substantial in that the current lot minimum is 35,000 square feet, and plaintiffs’ lot is 33,000 square feet, or 94 percent of the necessary square footage. Looking at the third factor, the essential character of the neighborhood would not be substantially altered, as there are numerous homes in the neighborhood that are built on lots smaller than 35,000 square feet. And as to the fourth factor, the granting of the variance would have no effect on the delivery of governmental services such as water, sewer, or garbage.
{¶ 15} Under the fifth factor, it is undisputed that plaintiffs purchased the lot before the enactment of the size restriction of 35,000 square feet. At the time of purchase, plaintiffs’ lot was a buildable lot. With regard to the sixth factor, plaintiffs’ predicament cannot be obviated through any means other than a variance. Finally, whether the spirit and intent of the zoning requirement would be observed by granting the variance is open to debate, but this factor is just one of many in the nonexhaustive list set forth in the Duncan decision, and no single factor is controlling. Id. at 86.
{¶ 16} Thus, under the analysis that is applicable to determining whether a variance should have been granted, the appropriate result would have been to grant the variance in this case. The factors in favor of such a result heavily outweigh those against.
{¶ 17} We conclude that there are three pillars that support the reversal of the Sixth District Court of Appeals’ decision. First, under a “grandfathering-in” analysis, the lot in question was purchased as a buildable lot in 1974, and, when the village decided to increase the minimum buildable lot size in 1978, this lot should have been grandfathered in so as to remain a buildable lot. Under Ottawa Hills Ordinance No. 78-5, the ordinance that increased the minimum lot size, “the lawful use of * * * any land or premises existing at the time of the effective date of this ordinance * * * may be continued although such use does not conform to the provisions hereof.” Article XIII, Section 13.1. If we were to accept the *417 village’s argument that until construction has begun on a lot, the lot has no legal “use,” and the property owner can have no expectations about the future use of the property, landowners in Ohio would hold title to vacant land at their own peril subject to governmental regulations that can change overnight. This result would eliminate the constitutional protections that people must be afforded with respect to their own private property. See generally Norwood v. Horney, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 34-38; Ohio Constitution, Article I, Section 1. It is to be remembered that for 32 years plaintiffs were paying the buildable-lot tax rate in this upscale neighborhood. Indeed, their investment had grown to a nest egg approximating a quarter of a million dollars in value until the village rendered it virtually worthless, causing the county to reduce its market value to $23,400. It was clearly arbitrary for the village to single this lot out for a denial of the grandfathering-in treatment enjoyed by similar lots in the same neighborhood!
{¶ 18} Under the second pillar, this situation involves a de minimis difference. The current zoning calls for a minimum lot of 35,000 square feet, and plaintiffs’ lot is 33,000 square feet. This difference is relatively small, and it is patently unreasonable to hold otherwise.
{¶ 19} Finally, there was disparate treatment of residents in the village when it came to permitting houses to be built on lots smaller than 35,000 square feet. In fact, the only residents who were denied this opportunity to have a smaller lot deemed buildable were plaintiffs. All other property owners who applied after the 1978 change in the ordinance were granted permission.
III. Conclusion
{¶ 20} Under these circumstances, we conclude that the Sixth District Court of Appeals erred in upholding the decision of the Lucas County Common Pleas Court in this matter. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Pfeifer, O’Donnell, and Kennedy, JJ., concur.
O’Connor, C.J., and Lanzinger and French, JJ., dissent.

. The two lots in question were originally platted in 1926 as a 46,000-square-foot lot and a 44,000-square-foot lot. However, the size of each lot was adjusted by the previous owner in 1973 with the approval of the village.