[Cite as *E. Main St. Lofts v. Kent Planning Comm.*, 2019-Ohio-5312.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| EAST MAIN STREET LOFTS, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | CASE NO. 2019-P-0069 |
| THE CITY OF KENT PLANNING COMMISSION, | : | |
| | : | |
| Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2017 CV 0297.

Judgment: Affirmed.

*Elisa P. Pizzino*, 697 West Market Street, Suite 102, Akron, OH 44303; *Warner Mendenhall* and *Logan Trombley*, The Law Offices of Warner Mendenhall, 190 North Union Street, Suite 201, Akron, OH 44304 (For Appellant).

*Eric R. Fink*, 11 River Street, Kent, OH 44240 (For Appellee).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Hallmark Campus Communities d.b.a. East Main Street Lofts ("EMSL"), appeals from the May 7, 2019 judgment entry of the Portage County Court of Common Pleas, affirming a decision of the City of Kent Planning Commission ("Commission") to deny a conditional zoning permit to construct the East Main Street Lofts. For the following reasons, the trial court's judgment is affirmed.

{¶2} The factual circumstances leading to the present appeal were articulated in the previous appeal, *East Main Street Lofts v. City of Kent Planning Comm.*, 11th Dist. Portage No. 2018-P-0004, 2018-Ohio-5342, and are restated in relevant part as follows:

On August 19, 2015, Hallmark Campus Communities ("Developer"), a real estate development company in Columbus, Ohio, applied for a site plan review and conditional zoning permit to construct the EMSL, a multi-family residential complex, in the city of Kent, Ohio. The development's parking lot was to be constructed in neighboring Franklin Township. After Franklin Township denied the parking plan, the Developer submitted a revised application on August 26, 2016. The new plan placed the entire proposed development, which consists of two 4-story residential buildings, a parking lot, and a green area, in Kent. The size was reduced from 98 units of one- and two-bedroom apartments with a total of 362 beds to 94 units of one- and two-bedroom apartments with a total of 184 beds.

The proposed development is primarily located in Kent's "Commercial High Density Multifamily Residential" ("C-R") district. Under Kent City Codified Ordinances ("KCO") Section 1145.02(b)(3), multifamily dwellings are conditionally permitted in the C-R district subject to the requirements set out in KCO Section 1171.01(a)(5), (9), (11), (22), (37), and (38).

The following zoning districts border the proposed development: Kent's C-R district to the north and northwest; Kent's "Multifamily Residential" ("R-4") district to the south and southwest; and Franklin Township's "General Commercial" ("C-1") district to the east.

Holly Drive extends into the development from Horning Road. This access point is located in Kent's R-4 district. Horning Road continues East into Franklin Township's "Single Family Residential" ("R-1") district. Franklin Township's C-1 district sits between the development and the R-1 district. Several single-family homes are located along Horning Road.

At the request of the Commission, the Developer hired "EMH & T" to generate a Traffic Impact Study. The Developer presented its proposal to the Commission on October 4, 2016. In February 2017, Kent's city staff found the proposed development either met the requirements for a conditionally permitted use under KCO Section 1171.01 or was granted a variance by the Board of Zoning Appeals.

2

The Developer again presented its case to the Commission on February 21, 2017. Prior to any discussion, an oath was administered to those members of the audience who wished to be heard. Thereafter, Ryan Pearson, a representative of the Developer, reviewed the site plan and proposal for EMSL. He answered questions from the commissioners about changes that were made to the plan pursuant to the Traffic Impact Study. He explained the city's traffic engineer and the Developer's traffic engineer were both involved in making the changes.

Doug Bender, Senior Traffic Engineer with EMH & T, discussed the Traffic Impact Study on behalf of the Developer. Mr. Bender explained the Traffic Impact Study considered five intersections in the area and that changes were made to the site plan based on the recommendations of the study. The Traffic Impact Study states: "All study area intersections are predicted to operate acceptably with existing conditions for vehicular traffic in the 2018 Build condition. Consequently, no off-site improvements are recommended at this time. A site-related improvement at the site entrance of Holly Drive is recommended to consist of:

> • Install pedestrian crosswalks on all three approaches to the Horning Road/Holly Drive intersection and a stop bar on the Holly Drive approach.
>
> • Construct pedestrian landings at each crosswalk location.
>
> • Improve the sidewalk along the west side of Holly Drive to provide an eight-foot wide path
>
> • Improve the site connection for pedestrians/bikes to the adjacent Holly Park apartments

No other site-related improvements are warranted or recommended.

Following Mr. Bender's discussion, several residents of Horning Road and owners of property on Horning Road, from both Kent and Franklin Township, provided comment. They expressed concerns regarding how the development would affect their neighborhood. One resident indicated the development would be "significantly overbearing to the existing R-1 neighborhood." The residents explained that increased population density resulting from the development would change the character of the neighborhood and contribute to traffic congestion, increased crime rates, blight, invasion of privacy, and pollution. In support, several neighbors referred to a "Comprehensive Community Housing Study and Needs

Analysis" ("Housing Study") published in 2016, which, in part, analyzed housing supply and demand in the city of Kent.

The residents also expressed doubt over the findings of the Traffic Impact Study. One resident indicated he thought the study was biased, and several residents contested the study's findings. In response to the concerns, Mr. Bender explained he had worked with the city staff to set up the parameters for the study. He further explained the procedures used in conducting the study and stated that pedestrian volumes were included in the study. Mr. Pearson also addressed the concerns, explaining the Developer was not trying to address all the community's issues with traffic but would make improvements to address certain pedestrian and bike connections.

After the public comment, Jennifer Barone, development engineer from the city of Kent, addressed the Commission and reviewed the proposed plan. She explained that the Traffic Impact Study was reviewed by the city's traffic engineer and the city engineer, who found the information in the study was acceptable. She further explained the city had plans to address traffic issues in the area. She stated the city staff found the Developer met the requirements of "the zoning code * * * with the changes and the variances that were granted."

The commissioners engaged in discussion and directed questions to Mr. Pearson. Following the discussion, they unanimously voted to deny the Developer's conditional zoning permit and site plan to construct EMSL.

Although no written decision was issued by the Commission, the verbatim transcript of the meeting includes the following discussion from each commissioner regarding his or her reasons for denying the permit.

> **Ms. Daniels:** * * * I have a couple of issues here. Number one * * * what's happening here is Kent State University which is creating half of the problem and what's happening here is * * * I would say the law enforcement, the Police Department. They are having so many problems and issues. * * * [T]he biggest problem I'm having with this * * * is * * * on this drawing here there's * * * 10 developments in there and we haven't done a housing study since 11-13-05. I can bring that in the housing study where * * * it just feels to me * * * I'm for business. I'm for development. I'm for all that but I'm just feeling that this little area is overdone. You know. The other thing I'm having here is Kent, Ravenna, and Franklin

4

Township whatever is still the city. I mean we still need to be compassionate with the people. And my issue should not be * * * disturbing to existing or future neighborhood use and shall not be detrimental to property in the immediate vicinity or the community as a whole. We already know there's going to be some issues here. So that's my two cents. And I don't have anything more to say.

* * *

**Mr. Clapper:** [L]ike Ms. Daniels said, my biggest concern is the impact on the neighborhood and the properties surrounding it * * * how it's going to affect the long term citizens of Kent and the property of the people who live around there.

* * *

**Ms. Edwards:** * * * So some of the things I looked at is * * * they just published in 2017 enrollment status for Kent State and the freshman, sophomore and junior classes * * * have all decreased by 5.47% * * * so going back to the housing study, and knowing that there's going to be less students from the feeder schools and that there are on-line courses now * * * My question now is that enrollment is going to continue to trend down? That is * * * a big concern for me. And then I also think about the residential houses there and are the people going to want to live there? Are those going to turn into rental properties? So you start to think about * * * the whole neighborhood * * * dynamics changing * * * so with that being said, I also have a concern with the buildings * * * the size of them and being that they are on the R-4 side of the property. * * * [A]nd its detrimental to the R-4 properties that are there and so I have a hard time with it being harmonious with the existing * * * surroundings as well.

* * *

The Kent R-4 properties * * * So those are some of * * * my thoughts on that. Anybody else from the Planning Commission have any further comments or questions?

**Mr. Paino:** Yeah * * * When I looked at the drawings over the weekend * * * I said these are nice looking buildings * * * They're actually very nice looking buildings and I don't necessarily object to the overall site plan but I do object to

5

where the buildings are located. I think they should be away from the residential area. I also think that the vehicular traffic should go to East Main Street * * * I think that Franklin Township should work with these developers in order to make that a reality because the reality is with the number of Franklin Township people in here and it's Franklin Township's problem * * * to update their roads so.

* * *

**Mr. Gargan:** I felt that it would be detrimental to the surrounding area. I also considered the housing study the City of Kent did. And I think we over built a number of multifamily or student housing at the current rate.

* * *

And I think they underestimated the impact of the traffic because I know the * * * Loop-Horning Road intersection is the worse intersection of Kent. I think that was totally downplayed by the Traffic Study.

**Ms. Daniels:** * * * They're building nice buildings, but * * * just the impact to the neighborhood. I mean I wouldn't like to have a building looking down on me and I have small children[.]

On March 23, 2017, the Developer filed in the Portage County Court of Common Pleas a notice of administrative appeal from the Commission's decision.

On October 24, 2017, the Developer filed a "Motion to Supplement the Record" pursuant to R.C. 2506.03 on the grounds that the transcript did not contain all the evidence. The motion was granted, and both parties subsequently filed briefs.

On December 21, 2017, the trial court entered a "Judgment Entry on Administrative Appeal pursuant to R.C. 2506." The court stated it had "reviewed the pleadings, the record, and the supplemented evidence to the record." The trial court stated the Commission "denied the application and site plan alleging it violated" KCO Section 1107.05(a)(2), (3), (4), and (6).

The trial court's judgment entry further states:

The Court finds that the City of Kent Planning Commission's reasons for denying the site plan for violations of KCO

1107.05(A)(3)(4) and (6) were not supported by competent and credible evidence due to its reliance on unsubstantiated and speculative public comments over expert evidence and the features of the site plan.

The Court further finds that the City of Kent Planning Commission's reasons for denying the site plan for violations of KCO 1107.05(A)(2)(3)(4) was arbitrary due to reliance on the public comments of a minority of surrounding property owners and non-residents to the detriment of the majority of surrounding property owners and residents.

The Court further finds that the City of Kent Planning Commission's reason for denying the site plan for violations of KCO 1107.05(A)(4) was illegal due to reliance on the economic conclusions of a housing market study rather than consider health, safety, welfare and morals as required by zoning law.

The trial court ordered that "Appellee's denial of the Appellant's site plan on February 21, 2017, is set aside and held for naught." The trial court further ordered that the site plan be approved by the Commission.

On January 4, 2018, the Commission filed a "Motion to Reconsider Based Upon New Case Law." The Developer filed a response. The trial court did not rule on the motion.

*Id.* at ¶2-18.

{¶3} On appeal by the Commission, we affirmed in part, and reversed in part, the ruling of the trial court. The matter was remanded for the trial court to consider the public comments and Housing Study, in addition to the record filed therein. *Id.* at ¶56. After considering the public comments and Housing Study as directed, and the other information contained in the record, the trial court affirmed the decision of the Commission to deny the permit.

{¶4} EMSL noticed a timely appeal from the trial court's May 7, 2019 judgment entry and raises two assignments of error which we consider together:

[1.] The trial court abused its discretion in finding the City of Kent Planning Commission's denial of Appellant's site plan under KCO 1107.05(a)(3) was supported by a preponderance of reliable, probative and substantial evidence.

[2.] The trial court abused its discretion in finding the City of Kent Planning Commission's denial of Appellant's site plan under KCO 1107.05(a)(4) was supported by a preponderance of reliable, probative and substantial evidence.

{¶5} Upon review of an administrative appeal, a court of common pleas considers whether the decision to grant or deny a certificate "is unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. Thereafter, an appellate court's review of the judgment of the trial court is more limited than that of the court of common pleas. *Jones v. Hubbard Twp. Bd. of Zoning Appeals*, 11th Dist. Trumbull No. 2014-T-0041, 2015-Ohio-2300, ¶7, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). "This court's review is whether, as a matter of law, the decision of the court of common pleas is supported by a preponderance of reliable, probative, and substantial evidence." *Id.*, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "'While the court of common pleas has the power to weigh the evidence, an appellate court is limited to reviewing the judgment of the common pleas court strictly on questions of law.'" *Carrolls Corp. v Willoughby Bd. of Zoning Appeals*, 11th Dist. Lake No. 2005-L-110, 2006-Ohio-3411, ¶10, quoting *Akwen, Ltd. v. Ravenna Zoning Bd. of Appeals*, 4th Dist. Portage No. 2001-P-0029, 2002-Ohio-1475, ¶17.

{¶6} The Supreme Court of Ohio, in *Kisil*, elaborated:

This statute [2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative

8

evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court.

*Kisil, supra*, at 34, fn. 4 (emphasis added).

{¶7} "[T]he common pleas court 'is bound by the nature of the administrative proceedings to presume that the decision of the administrative agency is reasonable and valid[,]' and the burden of demonstrating the invalidity of the agency's decision rests with the contesting party." *Battaglia v. Newbury Twp. Bd. of Zoning Appeals*, 11th Dist. Geauga No. 99-G-2256, 2000 WL 1804344, *3 (Dec. 8, 2000), quoting *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 456 (1993). Further, a trier of fact has no duty to accept evidence, expert or otherwise, as persuasive solely because it was not contradicted or challenged. *McWreath v. Ross*, 11th Dist. Trumbull No. 2008-T-0035, 2008-Ohio-5855, ¶85, citing *McCall v. Mareino*, 138 Ohio App.3d 794, 799 (8th Dist.2000) and *In re Baby Girl Doe*, 149 Ohio App.3d 717, 2002-Ohio-4470, ¶75 (6th Dist.).

{¶8} However, "[w]hile the court of common pleas is required to examine the evidence, the court of appeals may not weigh the evidence." *Shelly Materials, Inc. v. City of Streetsboro Planning and Zoning Comm.*, Sup.Ct. Slip Opinion No. 2019-Ohio-4499, ¶17, citing *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶14. "Apart from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial

evidence." *Id.*, citing *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769, ¶7, citing *Kisil*, *supra*, at 34.

{¶9} An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶10} Pursuant to KCO Section 1107.04, the Commission "shall hold a public hearing to review the proposed development as presented on the submitted application, plans and specifications in accordance with the standards established in this Zoning Ordinance." In its evaluation of the project, the Commission may consider "comments from the administration or the general public[.]" The Commission "may instruct the applicant or the administration to conduct additional studies, or seek expert advice." KCO Section 1107.04(a). Further, "[w]henever it feels necessary, the Commission may attach conditions to the approval * * * in order to insure the health, safety or welfare of the public as well as the integrity of an existing neighborhood in proximity to the development." KCO Section 1107.04.

{¶11} KCO Section 1107.05 provides that an applicant for a conditional zoning permit must "establish by clear and convincing evidence that the general standards of this Zoning Ordinance, this Chapter and the specific standards pertinent to each proposed use shall be met throughout the period of the proposed use." KCO Section 1107.05 further provides, in pertinent part to the present appeal:

> The Planning Commission shall determine compliance or noncompliance and shall insure that the general standards, the specific standards and other terms of this Ordinance pertinent to the proposed use shall be satisfied by the completion and operation of the proposed development.

10

(a)     General Standards: The Planning Commission shall review the particular facts and circumstances of each proposed use in terms of the following standards and shall find that such use of the proposed location:

\* \* \*

(3) Shall not be hazardous or disturbing to existing or future neighboring uses;

(4) Shall not be detrimental to property in the immediate vicinity or to the community as a whole;

\* \* \*

{¶12}   The parties do not dispute that EMSL was required to satisfy each of the standards set forth in KCO Sections 1107.05(a)(1) through (6) to obtain a conditional zoning permit.   The commissioners unanimously agreed the standards the Developer failed to meet were those set forth in KCO Sections 1107.05(a)(3) and (4).   KCO Section 1107.05(a)(4) is dispositive in the present matter.   As previously noted, the trial court fully considered the public comments and the Housing Study before concluding, in agreement with the Commission, that the project would be "detrimental to property in the immediate vicinity or to the community as a whole."   Although there was expert testimony to the contrary, the Commission and the trial court were within their discretion to determine it to be less credible than the public comments and Housing Study.

{¶13}   While EMSL argued during its presentation to the Commission that the modified proposal was no longer a rent-per-bed model and would be targeted towards young graduates and professionals in need of low-to-moderate income housing, the semantical categorization is irrelevant.   The important determination to be made was whether the proposed housing, as demonstrated to the Commission and regardless of categorization, should be approved.   The Commission assessed the testimony, data, and

evidence presented, and it determined that denial was appropriate based on KCO Sections 1107.05(a)(3) and (4). Because EMSL failed to satisfy each of the standards set forth in KCO Sections 1107.05(a)(1) through (6), denial of the permit was appropriate.

{¶14} On remand, the trial court properly considered the Housing Study, public comment, and the record before concluding that "there is competent, credible evidence supporting the Planning Commission's decision." This decision was based on conclusions that the Housing Study did not support the proposed conditional use permit, and that public sentiment was opposed to the project. These findings are supported by the record and are not erroneous as a matter of law. As the Ohio Supreme Court has stated, it would be inappropriate for this court to weigh the evidence—inter alia, the Housing Study, public comment, and the record—which was properly considered by the trial court. *See Shelly Materials*, *supra*, at ¶17.

{¶15} EMSL argues that the law of the case doctrine prevents consideration of the public comment; however, this is a misconstruction of our previous holding. While we previously stated that, considered alone, "[w]e do not determine that the public comment rose to the level of competent, credible evidence[,]" our directive to the trial court specifically required it to "properly take into account the *public comments* and Housing Study." *Id.* at ¶34 & ¶56 (emphasis added). When the public comments are considered in light of the findings of the Housing Study, they provide competent, credible evidence in favor of denial of the permit.

{¶16} Based on a review of the public comments, the Housing Study, and the record of the proceedings, the trial court did not err, as a matter of law, in concluding that the preponderance of the evidence supported the Commission's decision to deny the

12

permit on the basis that it would be detrimental to property in the immediate vicinity or to the community as a whole under KCO Section 1107.05(a)(4).

{¶17} EMSL's first and second assignments of error have no merit.

{¶18} The judgment of the Portage County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.