[Cite as *Clark v. Twinsburg*, 2024-Ohio-6088.]

STATE OF OHIO          )                   IN THE COURT OF APPEALS
                            )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

LYNN CLARK                       C.A. No.      30993

      Appellant

      v.                                APPEAL FROM JUDGMENT
                                      ENTERED IN THE
CITY OF TWINSBURG            COURT OF COMMON PLEAS
                                      COUNTY OF SUMMIT, OHIO
      Appellee               CASE No.     CV-2022-07-2332

DECISION AND JOURNAL ENTRY

Dated: December 31, 2024

SUTTON, Judge.

**{¶1}** Appellant, Lynn Clark, appeals from a judgment of the Summit County Court of Common Pleas that affirmed the decision of Twinsburg City Council to confirm the recommendation of its planning commission to approve the site plan of a developer, Scannell Properties 330, LLC ("Scannell"), to build two warehouses on undeveloped property located within the city. This Court affirms.

I.

**{¶2}** Scannell is the owner of a 33-acre piece of undeveloped property located on Old Mill Road in Twinsburg, Ohio, in an area that has been zoned as a limited industrial district since 1988. The dispute in this appeal involves city council's confirmation of the planning commission's recommendation to approve Scannell's final site plan to build two warehouses on this property, in a project known as Project Gumbo ("the project"). Before and during the planning commission's review and consideration of the site plan, residents who lived near the proposed site, including Mr.

Clark, expressed their opposition to the project because they were concerned about potential adverse effects that the project could have on their residential properties and the surrounding area.

{¶3} Approximately one year before Scannell submitted its site plan for the project, it obtained a permit from the city to clear numerous trees from the property. Nearby residents observed the tree clearing and, because they were apparently unaware of any plans to develop the property, they began to express concerns to the city about Scannell's potential plans to build on the vacant property. On March 21, 2021, Mr. Clark, a professional engineer, sent a letter to the building commissioner to express his concerns about Scannell's potential industrial use of the property. Specifically, he explained that he lived "within a few hundred feet of [Scannell's property] and wish to define my concerns and for you to tell me what you will do to address them." Mr. Clark emphasized that any development of Scannell's property would have an impact on nearby residents, yet there had "been a lack of communication on this site's development to the nearby residents."

{¶4} With the passage of a voter initiative on November 5, 2024, Twinsburg's Planning and Zoning Code was amended and is undergoing a further amendment process. At all times relevant to this appeal, however, the city's prior planning and zoning code was in effect. Mr. Clark's communications prior to and during the administrative proceedings, and his argument on appeal, point to provisions of the prior planning and zoning code. In his letter to the building commissioner, Mr. Clark expressed concern about how development of Scannell's property could affect the quality and quantity of surface and groundwater, wildlife, and other environmental features; as well as its potential to create noise or light pollution and/or traffic congestion or safety issues in the area. Mr. Clark's letter explicitly relied on Twinsburg Cod.Ord. 1181.05, which set forth several factors that the planning commission was required to consider and/or find before it

recommended approval of a site plan for proposed development in the city. Pertaining to those factors, Mr. Clark concluded his letter by enumerating several requests, which included that the city: (1) communicate with the public and allow residents to have input; and (2) require numerous traffic and environmental studies before granting "any additional permits for this property" to "ensure compliance with the City's Codified Ordinance 1181.05[.]"

{¶5} During February and March 2022, Scannell submitted a site plan for review and approval by, among others, the building commissioner, the city engineer, and the planning commission. Former Twinsburg Cod.Ord. 1195.03 (addressing site plan contents and approvals that were required for "[a]ll applications for building permits for new structures[.]"). Included within Scannell's application for site plan review was a 282-page environmental impact assessment (EIA), which was then required by Twinsburg Cod.Ord. 1175.05(a) because Scannell was proposing to build its project on undeveloped land. The EIA tracked the language of the ordinance that set forth the "Required Contents of Environmental Impact Assessments" and explicitly addressed its 12 enumerated provisions, in the form of an outline with underlined headings for each factor. *See* former Twinsburg Cod.Ord. 1175.05(c). Those provisions pertained to categories including the ecological resources and physiography of the property, as well as its zoning and visual character, and a summary of the proposed development.

{¶6} Over the next few months, the site plan was reviewed by the building commissioner, and the planning commission received input about the site plan and EIA from various city departments (including building, fire, and engineering) as well as reports and studies conducted by the United States Army Corps of Engineers, the United States Fish and Wildlife Agency, the Ohio Environmental Protection Agency, the Summit County Engineer, and the Summit County Soil and Water Conversation District.

{¶7} During that period, the planning commission also received and considered extensive input from area residents, including Mr. Clark, before it held its public meetings to consider and approve the site plan. Notably, Mr. Clark asked many questions, all of which pertained to the site plan as submitted and whether the project would comply with Twinsburg Cod.Ord. Chapter 1181, which set forth the requirements for site plan review by the planning commission. The city planner prepared a memo to explicitly respond to each of Mr. Clark's expressed concerns.

{¶8} The planning commission placed approval of the site plan for the project on its agenda for consideration at three public meetings held on March 7, April 18, and May 16, 2022. At the March 7 meeting, Matthew Weber of Weber Engineering appeared on behalf of Scannell to discuss the site plan proposal and to answer questions from members of the planning commission. The planning commission then heard from 15 members of the public, including Mr. Clark, other nearby residents, and a member of Twinsburg City Council, who expressed their concerns about the project. The planning commission thanked the residents for their participation and informed them that it would consider their concerns. According to the minutes of the meeting, none of the residents expressed concern that Scannell had not submitted an appropriate EIA or that its site plan was otherwise incomplete or deficient in any way.

{¶9} The next planning commission meeting on this issue was held on April 18, 2022. Mr. Weber gave an updated overview of the project at that time, including that Scannell had addressed concerns expressed by the planning commission and he submitted a report from a hydraulic engineer pertaining to the project's impact on ground and surface water. Residents were again permitted to voice their concerns. Mr. Clark expressed similar concerns to those he had raised before. Mr. Weber responded to the concerns expressed by members of the planning

commission and residents. In responding to resident concerns, the minutes indicate that Mr. Weber explicitly referred to the EIA that Scannell had filed. Of relevance here, there is no suggestion in the minutes that anyone raised a concern about the EIA being incomplete or deficient in any way. In fact, the building commissioner also spoke at the meeting and indicated that "there are no non-compliant items associated with the site plan."

{¶10} There was no further discussion about the site plan or EIA complying with the city's former planning and zoning code. At the conclusion of the meeting, the planning commission tabled its consideration of Scannell's site plan so that the commission members would have further opportunity to discuss the matter with each other, with Mr. Weber and Scannell, and for community members to present any further questions via e-mail. There is nothing in the record to indicate that Mr. Clark submitted further comments to the commission or that anyone raised an issue about the site plan or EIA failing to comply with the requirements of the city ordinances prior to the planning commission voting on the final site plan.

{¶11} At its meeting on May 16, 2022, the planning commission approved the final site plan by majority vote, pending further city and county approvals that are not relevant here. The planning commission referred its recommendation to city council for confirmation.

{¶12} City council considered the matter at two public meetings on May 24 and June 14, 2022. At the May 24 meeting, Mr. Clark again expressed his concerns about the project's potential impact on the water in the area, and he requested that more in-depth hydrology studies be conducted. At the June 14 meeting, city council passed a resolution to confirm the planning commission's recommendation to approve the final site plan, with the condition that the building height shall not exceed thirty-five feet. That condition was added in response to a concern expressed by another member of the public, an attorney. That attorney now represents Mr. Clark

on appeal, but there is nothing in the minutes of the council meeting to suggest that he was representing Mr. Clark at that time.

{¶13} Mr. Clark filed an administrative appeal in the Summit County Court of Common Pleas and raised three alleged errors. The common pleas court affirmed the decision of city council. Mr. Clark now appeals to this Court and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN APPLYING TWINSBURG'S REVIEW GUIDELINES TO THE UNDISPUTED FACTS IN THE RECORD WHEN IT FOUND THE TWINSBURG COUNCIL'S DECISION TO APPROVE THE SITE PLAN IS SUPPORTED BY THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE.

{¶14} Mr. Clark's sole assignment of error is that the trial court erred as a matter of law by finding that the city's decision to confirm the recommendation of the planning commission to approve Scannell's site plan was supported by a preponderance of the evidence. Pursuant to R.C. 2506.04:

> [t]he trial court's standard for reviewing an administrative appeal is whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence in the record. Then, on appeal, an appellate court conducts a more limited review. The appellate court reviews the trial court's decision only on questions of law to determine whether the lower court abused its discretion in finding that the administrative order was [or was not] supported by reliable, probative, and substantial evidence.

(Internal quotations and citations omitted.) *1011 E. Aurora Rd., LLC v. Bd. of Zoning & Bldg. Code Appeals*, 2024-Ohio-317, ¶ 10 (9th Dist.), quoting *Boice v. Ottawa Hills*, 2013-Ohio-4769, ¶ 7.

{¶15} During the administrative review of Scannell's site plan, Mr. Clark consistently based his opposition to the site plan on the enumerated factors set forth in former Twinsburg Cod.Ord. Chapter 1181. He specifically cited some of the factors set forth in Section 1181.07(c),

which the planning commission was required to consider and find before it recommended approval of a site plan for development in the city. Former Twinsburg Cod.Ord. 1181.09(b) required city council to consider those same factors before it took final action on a site plan. Those factors included that uses and values of nearby properties be safeguarded; the site plan be sensitive to the natural character of the site, to the extent practical; the site plan be adequately serviced by public utilities, roadways, and parking; and that adequate provision be made for stormwater drainage. Because Mr. Clark does not assert that the planning commission and/or city council failed to comply with these ordinances, this Court has not quoted or paraphrased the required factors in their entirety.

{¶16} In his administrative appeal, Mr. Clark relied, for the first time, on Chapter 1175 of the Twinsburg Codified Ordinances, which set forth "Environmental Performance Standards" for proposed development of certain types of property, including undeveloped land. *See* former Cod.Ord. 1175.05(a)(1). Section 1175.05(c) set forth the specific requirements for the contents of an EIA. Additionally, Twinsburg Cod.Ord. 1175.03 included review guidelines for proposed development, if certain environmental features would be affected.

{¶17} Mr. Clark relies on the language of former Twinsburg Cod.Ord. 1175.03(a)(4). Quoted in full, the relevant guideline provided:

> Proposed development shall comply, *as much as is practical* to the following *design guidelines*:
>
> (4) Natural watercourses shall not be filled, dredged, cleared, deepened, straightened, stabilized or otherwise altered, *except in cases of over-riding public interest.*

(Emphasis added.)

{¶18} The parties do not dispute that the guideline quoted above was applicable to the facts of this case because Scannell's site plan pertained to undeveloped property and would alter a

natural watercourse. The parties further agree that there was no explicit evidence in Scannell's EIA to demonstrate an over-riding public interest for altering the natural watercourse.

{¶19} What is disputed in this appeal is the legal force and effect of this guideline on the city's authority to approve Scannell's site plan and whether the merits of this dispute should be addressed for the first time in an administrative appeal. The city and the trial court recognized that Mr. Clark did not raise this argument during the administrative proceedings prior to the city's approval of the site plan. For reasons that will be explained below, this Court cannot reach the merits of this argument.

{¶20} Mr. Clark now asserts that Scannell submitted an incomplete or deficient site plan application because it did not demonstrate an over-riding public interest for altering the natural watercourse. He quotes a portion of the guideline out of context to maintain that it "unequivocally states, 'natural watercourses shall not be filled . . . or otherwise altered, except in cases of over-riding public interest." (Emphasis removed.) Based on that legal premise, because Scannell's EIA did not demonstrate an "over-riding public interest" for altering the watercourse, Mr. Clark asserts that the city lacked legal authority to approve Scannell's site plan and the common pleas court erred as a matter of law in affirming the city's decision.

{¶21} Mr. Clark's argument does not address the full language of this guideline or its legal significance to his argument. For example, he does not address the meaning of the phrase "as much as is practical." Mr. Clark also fails to explain why a "design guideline" that was set forth in Cod.Ord. 1175.03, a section that was separate and distinct from the specific "Required Contents of [EIA]" in Cod.Ord. 1175.05(c), created a mandatory requirement to be set forth in the EIA submitted with the site plan. Moreover, to resolve Mr. Clark's challenge, this Court would further

be required to determine whether this design guideline had any bearing on the legality of the city's decision to approve Scannell's site plan.

{¶22} This Court will not interpret the meaning of former Twinsburg Cod.Ord. 1175.03(a)(4) because this issue was not timely raised during the administrative proceedings. There are numerous reasons that the meaning of this guideline and its impact on the city's approval of the site plan could have and should have been resolved at the administrative level, before the planning commission made its final recommendation to approve Scannell's site plan.

### Participation in the Proceedings

{¶23} This Court's research on this issue reveals that most administrative appeals pertaining to the completeness of an application for a permit involve appeals by the applicant whose request for a permit was denied because its application was incomplete. *See*, *e.g.*, *Hetrick v. Ohio Dept. of Agriculture*, 2017-Ohio-8118, ¶ 11 (6th Dist.); *Cuyahoga Community College Dist. v. Highland Hills*, 2010-Ohio-5606, ¶ 3-6 (8th Dist.). In those cases, the deficiency of the application was addressed in an administrative appeal because it was the explicit reason that the administrative body denied the application.

{¶24} In this case, Mr. Clark is not a person who was denied a permit but is a nearby resident who appealed the decision to grant a building permit to a third party developer because he asserts that the project will adversely affect him. Mr. Clark was involved in the administrative proceedings and expressed complaints, and he has standing to bring this appeal only because he actively voiced his opposition to the project during the administrative proceedings. *See Robin's Trace Homeowners' Assn. v. City of Green Planning & Zoning Comm.*, 2010-Ohio-1168, ¶ 7-8 (9th Dist.), citing *Schomaeker v. First Natl. Bank of Ottawa*, 66 Ohio St.2d 304 (1981), paragraph two of the syllabus.

{¶25}  Just as Mr. Clark's active participation in the administrative proceedings gives him standing to appeal, it also gave him many opportunities to timely raise any deficiency in Scannell's EIA or site plan application before the planning commission made its final decision.  As is indicated in the record, he began expressing his opposition to Scannell developing the property almost one year before Scannell filed the site plan.  Mr. Clark actively participated in every meeting held by the planning commission before it made its recommendation to city council.

{¶26}  Through his lengthy and detailed expressed concerns, Mr. Clark indicated familiarity with the former Twinsburg Planning and Zoning Code, as he cited specific ordinances pertaining to planning commission approval of site plans.  He also expressed his familiarity with environmental considerations as a professional engineer.  Mr. Clark had the ability and opportunity to timely raise any alleged deficiency in the site plan application or EIA during the administrative proceedings but did not do so.  Given Mr. Clark's active involvement in the administrative proceedings, reason requires that this Court conclude that he could have and needed to present this issue during the administrative proceedings in order to preserve it for review on appeal.  *See Wilson v. Bethel Twp. Bd. Of Zoning Appeals*, 2010-Ohio-27, ¶ 28 (2d Dist.).

### Interpretation of the Guideline

{¶27}  To address Mr. Clark's new argument on the merits would require this Court to interpret the meaning of former Section 1175.03(a)(4) for the first time on appeal.  As explained above, that would require this Court to interpret the meaning and legal significance of multiple terms and phrases, as there is potential uncertainty in the meaning of the terms "design guidelines" and "over-riding public interest" as well as the phrase "as much as is practical."  It is not for a reviewing court to interpret the legal significance of these terms for the first time on appeal.

{¶28}   Moreover, Twinsburg Cod.Ord. 1101.07, included among the "General Provisions" of Title One of the former Twinsburg Planning and Zoning Code, explicitly pertained to its interpretation and application.  At the time Scannell filed its site plan, that provision provided that, "[i]n the event that any question arises concerning the application of regulations, performance standards, definitions, or other requirements of the City of Twinsburg Zoning Code, the Chief Building Officer shall be responsible for interpretation."  The term "Chief Building Officer" appeared only once in the former planning and zoning code and was not defined.  It is not for this Court to interpret that term for the first time in this administrative appeal.  For ease of discussion, however, this Court assumes, but does not determine, that the chief building officer was the building commissioner, a term that was used throughout the city's former planning and zoning code.

{¶29}   Had Mr. Clark alleged a deficiency in Scannell's EIA when he expressed his other concerns to the planning commission, the building commissioner could have interpreted the language of the design guideline and responded to Mr. Clark's concern.  Moreover, this Court cannot determine from the record whether the building commissioner already interpreted this provision and determined that Scannell's EIA satisfied the guideline requirements.  Mr. Clark recognizes in his brief that Scannell's EIA included a statement that "further avoidance of regulated surface waters is not possible due to the structural requirements of the proposed commercial development."  Because the issue concerning this guideline was not raised on the record, this Court has no way of knowing whether the building commissioner might have considered that statement as demonstrating that Scannell's site plan had complied with the design guideline to not alter the natural watercourse "as much as is practical[.]"  Nevertheless, this Court will not speculate as to

that interpretation, nor will it usurp the function of the building commissioner by attempting to interpret the guideline for the first time in this appeal.

### Administrative Determination of Completeness

{¶30} According to several provisions of the former planning and zoning code and the record in this case, the completeness of Scannell's EIA and site plan application was determined at the administrative level, prior to any consideration of the application by the planning commission. Former Cod.Ord. 1181.07(a) authorized the planning commission to review "[a] complete application for site plan review" and required that "[n]o review shall commence" until a complete application was received. That provision further stated that "[c]ompleteness of the application shall be determined based upon a written checklist of required submittals[.]" Specifically pertaining to the EIA, Section 1175.05(d) provided that "[e]nvironmental assessments will be subject to staff review for completeness and thoroughness[.]"

{¶31} The record includes a two-page "Staff Review Checklist" that was completed shortly after Scannell submitted its EIA. That document is supplemented by another 26 pages of drawings and single-spaced, typed comments, all of which indicated that Scannell's site plan and EIA complied with the specific requirements of the former planning and zoning code. As noted already, at the second of three public meetings of the planning commission, which Mr. Clark attended, the building commissioner stated on the record that there were no deficiencies in Scannell's site plan, and the record fails to indicate that anyone questioned or challenged that representation. Given that no one raised a timely challenge to that determination, this Court cannot now review that administrative determination that Scannell's site plan and EIA were complete.

**Opportunity to Supplement**

{¶32} Further, even if Mr. Clark had timely raised the EIA concerns that he raises now, and convinced the city that his argument had merit, the remedy would not necessarily have been to reject Scannell's site plan or prevent Scannell from developing its own property. The stated purpose of the city's environmental performance standards set forth in former Chapter 1175 was "to identify the anticipated impacts of development activity so as to protect the public health, safety and welfare from the adverse [e]ffects of environmental degradation[,]" not to stop commercial development of property in the city. Former Cod.Ord. 1175.01. The city's environmental performance standards "set forth general standards" to limit and mitigate the potential negative impact of development on the environment. *Id.* In conjunction with other provisions of the city's former planning and zoning code, the standards attempted to strike a balance between the potentially competing interests of the environment and property owners who sought to commercially develop their property in a district zoned for such development. As is apparent from the city's former ordinances and the record in this case, the administrative review of Scannell's site plan involved a voluminous and ongoing conversation between Scannell, the city, and other interested parties, with continual adjustments made to the site plan to balance the competing interests of all involved.

{¶33} A timely challenge on this issue, even if successful, would not necessarily have stopped the project, but would have allowed Scannell an opportunity to supplement its site plan application and potentially remedy any deficiencies before the planning commission voted to recommend approval or disapproval of the site plan. Former Twinsburg Cod.Ord. 1195.03, which set forth the requirements for site plans for all applications for new development, further provided that "[i]f, in the opinion of the Building Commissioner or City Engineer, the site plan lacks

sufficient information, requires additions and/or corrections, the applicant shall include the required information and resubmit the plan for review." Former Twinsburg Cod.Ord. 1195.03(d)(5).

{¶34} Finally, if this Court were to address Mr. Clark's untimely argument, it would undermine the fundamental rationale behind the doctrine of waiver or forfeiture (that issues not timely raised below should not be addressed on appeal). It is fundamental that an alleged error should be raised before the trial or administrative decision is made, when it could have been addressed and potentially avoided and/or corrected. *See State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus, citing *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus. If Mr. Clark had raised a timely challenge to the alleged deficiency in Scannell's EIA, the alleged defect could have been addressed and potentially remedied. The building commissioner would have had the opportunity to interpret the language of the relevant guideline on the record and, if there was a deficiency in Scannell's EIA, Scannell and the planning commission would have had the opportunity to address, and potentially remedy, any alleged defect in the site plan application.

{¶35} Because Mr. Clark did not preserve this challenge for review in his administrative appeal, this Court will not reach its merits. Mr. Clark's assignment of error is overruled on that basis.

III.

{¶36} The assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CONCURS.

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

{¶37} I do not necessarily agree with the majority's application of the forfeiture doctrine to the facts of this case. Nevertheless, I would affirm the trial court's judgment because Mr. Clark has failed to demonstrate that the trial court erred in its review of the administrative record before it.

APPEARANCES:

LOGAN TROMBLEY and WARNER MENDENHALL, Attorneys at Law, for Appellant.

MATTHEW G. VANSUCH, Attorney at Law, for Appellee.

IRVING B. SUGERMAN, Attorney at Law, for Appellee.